Filed: 7/24/2023 2:42 PM
Michael Gould
District Clerk
Collin County, Texas
By Monica Saenz Deputy
Envelope ID: 77818883

CAUSE NO. 380-03836-2023 _____

| | | |
|---|---|---|
| JANE DOE | § | IN THE JUDICIAL DISTRICT |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ___ DISTRICT COURT |
| | § | |
| FRISCO INDEPENDENT SCHOOL | § | COLLIN COUNTY, TEXAS |
| DISTRICT, FRISCO POLICE | § | |
| DEPARTMENT, and JOHN | § | |
| HOOVER, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Plaintiff Jane Doe ("Plaintiff"), by and through her attorney of record FORTENBERRY FIRM PLLC, Zeke Fortenberry, 18333 Preston Rd., Ste 375, Dallas, Texas, files this Original Petition complaining about Frisco Independent School District, Frisco Police Department, and John Hoover ("Defendants") and respectfully shows the Court the following.

### I.   INTRODUCTION AND REQUEST FOR USE OF PSEUDONYM

1.     This is an action arising from the sexual assault of the Plaintiff by Defendant John Hoover, a School Resource Officer ("SRO") for Defendant Frisco Independent School District. At the time of Defendants' conduct, Plaintiff was a minor.  This assault occurred in violation of Plaintiff's (i) Constitutional substantive due process and equal protection rights; and (ii) rights protected by the common law of the State of Texas.  Plaintiff brings this lawsuit against those responsible for the violation of Plaintiff's rights.

2.     **Request for Use of a Pseudonym/Anonymity**.  Because this lawsuit involves sexual abuse towards the Plaintiff who was a minor at the time of the events giving rise to this

lawsuit, Plaintiff requests the Court permit Plaintiff to proceed anonymously to help protect the privacy, dignity, and well being of the Plaintiff. *See* Fed. R. Ci. P. 5(a)(3); *Doe v. El Paso County Hosp. Dist.*, 2015 Lexis 46081 (W.D. Tex. Apr. 1, 2015) (examples of situations warranting anonymous actions, including (i) challenging governmental activity; (ii) disclosure of intimate, personal information; (iii) lawsuits involving particularly vulnerable parties or witnesses – including but not limited to, victims of assault; and (iv) protecting against risk of mental harm).

## II.    PARTIES

3.      Plaintiff Jane Doe is an individual residing in Denton County, Texas. At the time the events giving rise to this lawsuit began, Plaintiff Jane Doe was a minor. Throughout the time of the events giving rise to this lawsuit, Plaintiff was an individual residing in Denton County, Texas and a student of Defendant Frisco ISD. She has now reached the age of majority and brings this suit on her own behalf.

4.      Defendant Frisco Independent School District (hereinafter "Frisco ISD" or "FISD" is a political subdivision and/or municipality of both Denton and Collin County, Texas. Defendant Frisco ISD is responsible for the policies, practices, and customs of its school district, as well as the hiring, training, supervision, control and discipline of its employees, including SROs. Defendant Frisco ISD was the employer of the school personnel named herein and exercised control over Defendant Hoover in his capacity as an SRO within Frisco ISD. As a recipient of federal financial assistance, Defendant Frisco ISD is obligated to protect its students from sexual abuse. Frisco ISD can be served with process by serving the Superintendent, Dr. Mike Waldrip, Superintendent of Schools, at 5515 Ohio Drive, Frisco, Texas 75035. *Issuance of citation is requested at this time.*

5.      Defendant Frisco Police Department is a municipal agency located in Denton and

Collin County, Texas. Frisco PD can be served by serving its Chief of Police, David Shilson, at 7200 Stonebrook Parkway, Frisco, Texas 75034. *Issuance of citation is requested at this time.*

6.      Defendant John Hoover is an individual residing in Collin County, Texas. He can be served at 501 Allbright Road, Celina, Texas 75009 or wherever he may be found. *Issuance of citation is requested at this time.* At all times material to this suit, he was employed as a school resource officer by Defendant Frisco Independent School District and Defendant Frisco Police Department. The acts complained of arise from the conduct of Defendant Hoover while acting under the color of state law, and were committed within the scope of his employment with Defendant Frisco Independent School District and Defendant Frisco Police Department. Defendant Hoover is sued in his individual and official capacity.

### III.    JURISDICTION AND VENUE

7.      The subject matter in controversy is within the jurisdictional limits of this court. This court has jurisdiction over the parties because multiple defendants are located in Collin County, Texas and some of the acts in question occurred in County, Texas.

8.      Plaintiff seeks monetary relief in excess of $1,000,000.00.

### IV.    FACTS

**A.   The Role of School Resource Officers within Defendant Frisco ISD.**

9.      Defendant Frisco ISD partners with the police departments in Frisco, Plano, McKinney and Little Elm to provide School Resource Officers for each of its campuses. The salaries, vehicles, and equipment of these SROs are shared costs between Defendant Frisco ISD and Defendant Frisco PD.

10.     The SROs work closely with the Frisco ISD security team to provide a visible police presence and visibility in the schools. The SROs are assigned to either a single high school

or to a middle school and 2-3 elementary schools. Defendant Frisco ISD and Defendant Frisco PD are both involved in the hiring process for an officer to become an SRO. SROs must interview with the FISD superintendent. Once an officer has been assigned as an SRO, they receive an email address from Defendant Frisco ISD.

11.    Each SRO works directly with FISD campus administration. The level of involvement, communications, and specific day-to-day tasks performed by the SRO is highly dependent on the preferences of the FISD campus administrator for the school. If the relationship between campus administration and the SRO is not working well, the FISD campus administration can insist that a different SRO be assigned to the campus.

12.    SROs and other employees of Defendant Frisco ISD and Frisco PD are in a special position of trust and authority over students such as Plaintiff. They are to protect and act for the benefit of students such as Plaintiff. Students place special confidence in SROs and school officials, and therefore, the SROs and school officials are bound to act in good faith and with due regard for the interest of those students, including Plaintiff. An informal fiduciary duty also existed in this case from Defendant Hoover's personal relationship of trust and confidence with Plaintiff as discussed *infra*.

13.    During the summer months, the SROs may be assigned to work the Junior Police Academy ("JPA"). JPA is a program for students living in Frisco or attending school within Frisco ISD. To take part in the JPA, the student must submit an application. These applications are reviewed by the SROs and FISD school administrators before selections are made.

14.    JPA takes place on Defendant Frisco ISD properties and is staffed by SROs. SROs provide trainings on a variety of police-related topics, and the children of SROs often volunteer or otherwise participate in JPA.

**B. Defendant Hoover's History of Inappropriately Close Relationships with Female Frisco ISD Students.**

15.    While working at Staley Middle School, Defendant Hoover routinely welcomed female students into his office to get jolly ranchers. Female students started showing up late to class because they were in Defendant Hoover's office so often. On one occasion, Principal Anita Robinson saw Defendant Hoover sitting on a step in the school cafeteria, leaning back against the step with a group of girls standing around him. On the last day of school in April 2021, Defendant Hoover was signing the yearbooks of female students. The Principal reported Defendant Hoover's behavior to Human Resources. She believed that Defendant Hoover "didn't get a lot of attention in the past, and really enjoyed the female attention he was getting at the school." She observed that he mostly took pictures with female athletes and was around female students. When a group of 8th grade female students left Staley Middle School to go to Memorial High School, the Staley Principal called the principal of Memorial "to give her a heads up" regarding Defendant Hoover's behavior.

16.    When Staley Middle School Counselor Julie Barrentine learned that Defendant Hoover had been hired, "she was immediately concerned about" one female student in particular. Defendant Hoover was close with the family of this student. He would visit their home and he knew everything about their family. He had the female student's personal cell phone number. The counselor noticed that Defendant Hoover "bonded with the girls way more" and did not even try to bond with the male students. He often invited them into his office for candy and they would leave notes on the whiteboard on his office door. According to the Counselor, Defendant Hoover "was just really friendly with the girls."

17.    Another employee of Staley Middle School – Jenele Reyes – observed the same types of behaviors. Defendant Hoover was always only around female students. If she tried to

reprimand the female students in front of Defendant Hoover, he would laugh. And he would offer them candy and they would leave notes for him on the whiteboard outside his office door.

18.    Upon information and belief, Defendant Hoover had a history of disciplinary issues as an SRO.

### C. Defendant Hoover Grooms Plaintiff for a Sexual Relationship.

19.    Plaintiff began attending a FISD high school in the Fall of 2018. Defendant Hoover worked as a School Resource Officer and worked at the JPA program in the summer.

20.    In June of 2021 Plaintiff was 16 years old. Defendant Hoover was 34 years old. At the time, Defendant Hoover worked JPA at Pearson Middle School in Frisco ISD where Plaintiff was a volunteer. Defendant Hoover was an SRO in Frisco ISD at the time he met Plaintiff and throughout the course of his improper relationship with her.

21.    Defendant Hoover struck up a conversation with Plaintiff and quickly began making sexual jokes with her. This eventually led to Defendant Hoover calling and texting with Plaintiff regularly from July of 2021 through August 7, 2021 at all hours of the day and night. During this time, Defendant spoke with Plaintiff on the phone at least 38 times, including 10 times in one day with the calls ranging in length up to 143 minutes long. Defendant often stated that he loved Plaintiff and called her "babygirl." He told her that he knew her "very well" and needed her "to know that I care deeply." He complimented her appearance regularly, including specifically complimenting her breasts and butt, and he told her that he would be "distracted" if she wore leggings. Defendant Hoover told Plaintiff that he had had a vasectomy and could not get anyone pregnant. He made a point to note that this extended to "anyone" and not just his wife.

22.    The two often discussed not being able to sleep and feeling like "someone" was looking over Defendant Hoover's shoulder. At one point Defendant Hoover told Plaintiff that they

had met two years prior when he accidentally grabbed her butt and he was afraid she would tell her dad about it.  He joked about this, saying "well I already felt your butt."

23.    On at least one occasion, Defendant Hoover told Plaintiff that he dreamed about her and wanted to tie her up and handcuff her.  He commented about how he was 17 years older than Plaintiff and could be her dad.  When Plaintiff told Defendant Hoover about a boy hitting on her, Defendant Hoover stated "I'll kill him."  Plaintiff shared information about her ex-boyfriend with Defendant Hoover who told her that he did not deserve her.

24.    Defendant Hoover also encouraged Plaintiff to buy her own phone so she did not have to worry about getting in trouble.  He told her it was a smart idea and how she could do it because she was a grown up.  He further encouraged her idea to move in with her mom because she had fewer rules at her mom's house.  Defendant Hoover told Plaintiff he could see her more if she was at her mom's.  He also invited Plaintiff to his house and told her she could just say she was babysitting.

25.    Defendant knew that Plaintiff had a complicated home life and that she had been sexually assaulted as a child.  He knew that Plaintiff had a lot of law enforcement members of her family and that she "trusted all cops."  He also knew that Plaintiff felt bad telling anyone no, and that she had suicidal thoughts in the past.  Defendant Hoover was also aware that Plaintiff had sex with her ex-boyfriend because he wanted it and she felt pressured and just said yes.

26.    Defendant Hoover used all of this information to target Plaintiff and progressively push boundaries with her until the relationship became sexual.

### D. Employees of Defendant Frisco ISD and Defendant Frisco PD Ignore Defendant Hoover's Grooming Behavior.

27.    Plaintiff served as a volunteer for the JPA for several years and was familiar with most of the officers who worked the JPA.  The JPA was run by Frisco PD, staffed by SROs, and

held on Frisco ISD property.  During JPA in the summer of 2021, multiple Frisco ISD SROs and

other employees noticed interactions between Plaintiff and Defendant Hoover that seemed "odd."

In fact, according to SRO Valdez, the joke among the SROs was that Defendant Hoover had not

yet "figured out how to get away" from Plaintiff's friendly behavior.  Plaintiff admitted to one

SRO that she was dealing with a lot of personal issues that summer, yet neither that SRO nor

anyone else considered this to be a fact indicating that Plaintiff was vulnerable to someone like

Defendant Hoover.   And despite noticing multiple instances of concerning behavior and

interactions between Plaintiff and Defendant Hoover, none of these SROs reported the behavior

or investigated it further.

      28.     On multiple occasions in the summer of 2021 the Lead Program Coordinator for

JPA – Officer Kerri Jones – noticed that Plaintiff was hanging around Defendant Hoover very

closely.  Plaintiff would frequently hug Defendant Hoover and walk up behind him, putting her

arms around his waist and chest area to hug him from behind.  During lunch breaks Plaintiff would

sit down next to Defendant Hoover at the table that was reserved solely for the officers.  There

were several instances where the Lead Program Coordinator observed Plaintiff and Defendant in

the parking lot talking by themselves after everyone else had left.  None of these observations were

reported for further inquiry.

      29.     During the week of July 19-22, 2021 another Frisco ISD SRO – Officer Wilcox –

working at JPA observed Plaintiff and Defendant interacting with one another regularly, including

eating breakfast and lunch together multiple times.  Officer Wilcox also saw Plaintiff wearing

Defendant Hoover's baseball cap throughout the week.  This Officer specifically noticed that

Plaintiff and Defendant were talking to one another and near each other more so than other officers

and volunteers.  Officer Wilcox also saw Plaintiff and Defendant leave together to get lunches for

themselves and the other officers from a nearby business, and Officer Wilcox also saw Plaintiff and Defendant Hoover standing together with Plaintiff leaning her back into Defendant Hoover's chest. On one occasion, Officer Wilcox saw Plaintiff and Defendant Hoover's cars parked next to each other in the school parking lot after JPA had ended for the day and everyone else had left. None of these observations were reported for further inquiry.

30.     Frisco ISD SRO D. Ramos also observed unusual behavior between Plaintiff and Defendant Hoover during the summer of 2021. For example, he noticed that Plaintiff routinely sat at a separate table with the officers. She was the only volunteer to do this. He noticed that Plaintiff and Defendant Hoover were often "hanging out with each other" during the week of July 19-22, 2021, and he thought it was "weird" that Plaintiff would wear Defendant Hoover's hat for the entire day at times. Officer Ramos also saw that Plaintiff would sit next to Defendant Hoover during presentations and lunch. None of these observations were reported for further inquiry.

31.     On August 5, 2021 Frisco ISD SRO T. Craig went to lunch with Defendant Hoover. Defendant Hoover suggested that the two have lunch at Casa Del Bro. On the way there, Defendant Hoover mentioned that Plaintiff worked there. During the meal, Plaintiff came back and forth to the table several times, sitting next to Defendant Hoover each time. Officer Craig also noticed that Plaintiff and Defendant Hoover were "being very friendly with each other and at times pok[ed] one another in the sides in a playful manner." Also during this meal, Plaintiff discussed being frustrated with her mother. Defendant Hoover then mentioned that  Plaintiff had been sexually assaulted when she was 7 years old, that Plaintiff was like a daughter to him and his wife, and that Plaintiff had his personal cell phone. None of this information was reported for further inquiry.

32.    During the weeks of June 7-10, 14-17, June 28-July 2 and July 19-22, 2021 Frisco ISD SRO Crouch worked at JPA.  During these weeks, Officer Crouch saw Plaintiff sitting with Defendant Hoover on several occasions.  Officer Crouch believed Defendant Hoover welcomed Plaintiff's presence.  One time he heard Plaintiff and Defendant Hoover discussing Plaintiff's break up with her boyfriend.  Officer Crouch believed this was odd, but "dismissed it as teenage girl behavior."  Officer Crouch noticed that Defendant Hoover and Plaintiff were "constantly" near one another and had "no regard for personal boundaries."  The two touched each other in ways that Officer Crouch did not believe were appropriate, including one time when Plaintiff massaged Defendant Hoover's shoulders while the two sat together on the bleachers.  In another instance, Defendant Hoover stood very close to Plaintiff and then "embrac[ed] her."  Each time Officer Crouch saw Plaintiff and Defendant Hoover engaged in "concerning" behavior, "it was always out in the open."  He "never once observed anything that wasn't clear and visible to everyone in their proximity."  None of this behavior was reported or investigated further.

33.    During the final week of JPA, another Frisco ISD SRO Baughman noticed behaviors between Plaintiff and Defendant Hoover that "stuck out" as odd.  Officer Baughman noticed Plaintiff scratching or massaging Defendant Hoover's back.  He believed this was odd, but "didn't have any prior information to see it as inappropriate."  Officer Baughman also saw Plaintiff and Defendant Hoover tickling one another, but he did not feel that this "was egregious enough to speak with Hoover about it."  None of this behavior was reported by Officer Baughman or investigated further.

34.    During the first two weeks of JPA in July, SRO B. Thomason noticed that Defendant Hoover and Plaintiff "had become strangely close."  The two were always together.  On one instance, Officer Thomason unlocked a room to allow someone to retrieve a lost water bottle.

When he opened the door he observed Defendant Hoover and Plaintiff talking in the room alone. That same day, Officer Thomason observed Plaintiff and Defendant Hoover talking in the parking lot. Officer Thomason noticed small things that "started to add up and were strange," including Defendant Hoover bringing breakfast to Plaintiff and the two picking up lunch together for the officers at JPA.

35.    For weeks during the summer of 2021, at least 7 SROs saw Plaintiff and Defendant Hoover engaged in inappropriate behavior given their student/SRO dynamic. None of these individuals reported the behavior to superiors, talked to Plaintiff or Defendant Hoover, or investigated the behavior further.

**E.  Defendant Hoover Uses His Position of Authority and Trust to Coerce Plaintiff into a Sexual Relationship.**

36.    On June 28, 2021, Plaintiff turned 17. Thinking that his conduct would be legal, Defendant Hoover then began a sexual relationship with Plaintiff who was still a student in Frisco ISD. Plaintiff would joke with Defendant Hoover about how he was a pedophile and he told her not to say that to him because she was 17. Defendant had sex with Plaintiff on three separate occasions between July 26, 2021 and August 8, 2021. During one occasion, he provided Plaintiff with a sex toy and used it on her.

37.    On or about July 26, 2021, Defendant and Plaintiff ate lunch together at Blue Goose Cantina in Frisco, Texas. After finishing their meal, the two sat in Plaintiff's car. Defendant Hoover began touching Plaintiff's thigh. He then moved her underwear to the side and intentionally and knowingly digitally penetrated Plaintiff several times. Defendant Hoover joked with Plaintiff about getting in the back of the car and doing other things. Plaintiff was nervous and uncomfortable. Defendant was on duty when this took place and wore a "cop shirt." He told Plaintiff that he had to turn off his work cell phone so that he could not be tracked.

38.    In July of 2021, Defendant and Plaintiff ate lunch together at Fuzzy's Taco Shop in Frisco, Texas.  Plaintiff did not eat much because she was shaking and nervous the entire time. During the meal, Defendant Hoover joked about the sexual things he wanted to do to her, and he called Plaintiff a "tease."  After eating, Defendant followed Plaintiff to her house.  Plaintiff was anxious and scared.  She was shaking so much that Defendant Hoover even commented about how he noticed her car was shaking on the way to her house because she was shaking so badly.  Plaintiff tried to put Netflix on the TV in the hopes that nothing else would happened.  Plaintiff was shaking and pacing around the room when Defendant Hoover told her to "come here."  Defendant Hoover hugged Plaintiff, told her it was ok, to calm down, and it's fine.  Defendant then began kissing Plaintiff.  He then intentionally and knowingly performed digital penetration and oral sex on her, and had vaginal sex with Plaintiff.  He also used his bicep and arm around her neck to choke Plaintiff.  Plaintiff could not breathe and coughed.  Defendant Hoover's use of force was without Plaintiff's consent.  She felt it was too late to stop and was scared that Defendant Hoover would be mad if she did.

39.    Plaintiff also recalled a time when Defendant Hoover told her he put people in "rape choke holds" and he emphasized "rape."  Defendant Hoover would tell Plaintiff that he enjoyed watching her squirm.  Defendant was on duty when this took place and was wearing a "cop shirt." He told Plaintiff that he had to turn off his work cell phone so that he could not be tracked. Defendant Hoover had his gun with him and Plaintiff was not sure if she could say no because he was a police officer.  Plaintiff was not free to leave.  Consent that is the product of official intimidation or harassment is not consent at all.  Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to review.  *See Florida v. Bostick*, 501 U.S. 429, 348 (1991).  Plaintiff felt forced to submit to Defendant Hoover's sexual

misconduct because she was isolated with no one else around, she felt intimidated by authority, and she was frightened that the sexual misconduct and physical assaults would escalate if she did not comply.

40.     Later that same week, Defendant and Plaintiff had a smoothie together and then went back to Plaintiff's home. Defendant again intentionally and knowingly had vaginal sex with Plaintiff. Defendant then asked Plaintiff "do you trust me" and then intentionally and knowingly penetrated Plaintiff without her explicit consent. On this occasion, Defendant Hoover pinned Plaintiff down on the bed. She was face down, arms under her, and his body weight was on top of her so that she could not move and she was not free to leave. Plaintiff did not consent to this restraint and she did not like it. Defendant was on duty when this took place and wore a "cop shirt." He told Plaintiff that he had to turn off his work cell phone so that he could not be tracked.

41.     On or about August 6, 2021, Defendant and Plaintiff again had sex. On this occasion, Defendant brought Plaintiff a vibrating sex toy and used it on Plaintiff, including putting it inside her. Defendant was on duty" when this took place and wore a "cop shirt." He told Plaintiff that he had to turn off his work cell phone so that he could not be tracked.

42.     Defendant Hoover used his position of trust and authority as an SRO to begin a sexual relationship with Plaintiff. He knew this behavior was inappropriate. He wanted Plaintiff to delete their text messages each day, and he would express concerns that Plaintiff's dad (a former police officer) would find out about their relationship.

43.     During their conversations and sexual encounters, Defendant Hoover always made it obvious that he had a gun. He would point at it or pat his gun and say "if anyone comes in here, I have this." On at least two occasions while Defendant intentionally and knowingly had sex with Plaintiff, his gun was visible to Plaintiff. Defendant Hoover also told Plaintiff that he ran her

license plates, knew where she lived, and knew where she parked her car while she was at her

dad's house. He used his personal vehicle when driving to Plaintiff's house because he knew his

work vehicle could be tracked.

44.    Defendant Hoover would discuss the use of sodium pentanol, a truth serum, on

Plaintiff, stating he would use it if he had to. Defendant Hoover told Plaintiff that he was evil and

sadistic. He told her about arrests he had made and talked about how he "knew people" and could

pass a lie detector test. Plaintiff felt like she could not say no to Defendant Hoover because he

was an authority figure.

45.    Defendant Hoover's conduct shocks the conscience and violates Plaintiff's right to

bodily integrity.

46.    Defendant Hoover's actions were done under the color of law in at least the

following ways:

    a.    Defendant Hoover's relationship with Plaintiff grew out of his role as an
          SRO in JPA, a legitimate police activity;

    b.    Defendant Hoover took advantage of his position of authority as an SRO at
          JPA;

    c.    Defendant Hoover used the authority of his position by telling Plaintiff he
          ran her license plates and knew where she parked her car;

    d.    Defendant Hoover used the authority of his position by telling Plaintiff that
          he would use truth serum on her if he had to;

    e.    Defendant Hoover coerced Plaintiff into complying by referencing he had
          his gun;

    f.    Defendant Hoover gave the implicit threat that he would never be held
          accountable because he could pass a lie detector test; and

    g.    Defendant Hoover was on-duty at each instance of sexual misconduct.

**F. Defendant Hoover's Arrest and Plea**

47.    On August 8, 2021 Sergeant Cory Kraft of Defendant Frisco PD was informed about an improper relationship between Plaintiff and a Frisco ISD SRO.

48.    Defendant Hoover was arrested on August 13, 2021.

49.    Defendant Hoover was charged with Sexual Performance by a Child in violation of Texas Penal Code 43.25.

50.    On February 17, 2023, Defendant Hoover pleaded guilty to a charge of Improper Relationship Between Educator and Student and was sentenced to 10 years of deferred adjudication community supervision.  *See* Exhibit A (judgment and sentence).

### G. Defendant Frisco ISD and Frisco PD's Tacit Policy or Custom of Allowing Sexual Misconduct.

51.    SROs should be held to the highest standard of conduct, particularly in light of their authority and their involvement and interaction with our children.

52.    Defendant Frisco PD and Defendant Frisco ISD knew or should have known that Defendant Hoover's actions towards Plaintiff and other Frisco ISD female students were improper grooming behavior designed to lead Plaintiff into a sexual relationship.

53.    At least seven (7) SROs witnessed improper behaviors between Plaintiff and Defendant Hoover. None of these individuals reported the behavior, confronted Defendant Hoover about it, or investigated it further. In fact, they even commented about how friendly Plaintiff and Defendant Hoover were with one another, joking that Defendant Hoover had not yet figured out how to get away from Plaintiff. These SROs acted with complete disregard for Plaintiff who was a minor when the behaviors began and a student at Defendant Frisco ISD at all times.

54.    Several ISD employees including a principal and a counselor also witnessed improper behaviors between Defendant Hoover and female students on several occasions. These ISD employees also failed to report the behavior.

55.    On information and belief, Defendant Hoover had prior conduct infractions while on the job.

56.    Defendant Frisco PD was indifferent in its supervisory position as to the hiring, training, and supervision of employees.

57.    Defendant Frisco ISD was indifferent in its supervisory position as to the hiring, training, and supervision of its employees.

**H. Plaintiff's Demise**

58.    As a result of the sexual misconduct and actions of the Defendants as a whole, Plaintiff gained weight, has past and current medical issues and physical injuries related to the assaults, lost motivation to attend college, became depressed and sought the care of a therapist and has been diagnosed with post-traumatic stress disorder.  She also became extremely paranoid about going to work and being around other police officers.

## V.    CAUSES OF ACTION

### COUNT ONE: 42 U.S.C. § 1983 – Constitutional Violations
(against Defendant Hoover individually)

59.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.  All claims and matters are plead in the alternative so as to avoid waiver.

60.    Violations of the Fourteenth Amendment by local government state actors create a cause of action under the Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983 as federal law provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

61.    The Supreme Court of the United States has held that Congress intended § 1983 to apply to local government entities as well as persons. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).  Frisco ISD qualifies as "persons" under § 1983. *Id.* at 690.

62.    In addition, a Section 1983 suit may be brought against a government official in his individual capacity, and personal liability is established when the official (1) acting under color of state law; (2) caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159 (1985).

63.    It is clearly established that, "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (en banc).  The court reasoned: "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse." *Id.* at 451.

64.    42 U.S.C. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity by the Constitution or law of the United States.

65.    With respect to Defendant Hoover, he engaged in sexually abusive conduct of Plaintiff, by and through his employment with Frisco ISD and Frisco PD, which caused Plaintiff to suffer a deprivation of her rights guaranteed by the Constitution, as set forth above, including the substantive due process component and equal protection rights applied by the Fourteenth Amendment.  Accordingly, Plaintiff alleges that Defendant Hoover, acting in his individual capacity under color of state law, deprived Plaintiff of her rights, privileges, and immunities secured by the Fifth Amendment to the Constitution of the United States, incorporated and applied to the state through the Fourteenth Amendment.  The above facts demonstrate Defendant Hoover violated these constitutional rights with respect to Plaintiff.

66.     As a direct and proximate result of said acts and/or omissions, Plaintiff has suffered the following injuries and damages:

      a.     Violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from state-sponsored deprivation of liberty without due process of law, and enjoyment of equal protection under the law;

      b.     Violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from state-sponsored deprivation of liberty without due process of law, and enjoyment of equal protection under the law; and

      c.     Plaintiff's pain and suffering and emotional trauma and suffering.

### COUNT TWO: 42 U.S.C. § 1983 – Constitutional Violations
(against Defendant Hoover in his official capacity and Defendants Frisco ISD and Frisco PD)

67.     Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.  All claims and matters are plead in the alternative so as to avoid waiver.

68.     Violations of the Fourteenth Amendment by local government state actors create a cause of action under the Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983 as federal law provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

69.     The Supreme Court of the United States has held that Congress intended § 1983 to apply to local government entities as well as persons. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).  Frisco ISD qualifies as "persons" under § 1983. *Id.* at 690.

70.    In addition, a Section 1983 suit may be brought against a government official in his individual capacity, and personal liability is established when the official (1) acting under color of state law; (2) caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159 (1985).

71.    It is clearly established that, "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (en banc). The court reasoned: "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse." *Id.* at 451. In addition, we have long recognized that physical sexual abuse by a state official violates the right to bodily integrity. *See United States v. Guidry*, 456 F.3d 493, 506 n.7 (5th Cir. 2007) (affirming the Fourteenth Amendment protects "the right to be free from sexual assault" committed by a law enforcement officer against a non-detainee); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (recognizing the established "liberty interest in freedom from sexual abuse by persons wielding state authority"); *Taylor ISD*, 15 F.3d at 450–51 (holding that "physical sexual abuse" by a government actor violates a child's right to bodily integrity)

72.    42 U.S.C. § 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity by the Constitution or law of the United States.

73.    With respect to Defendant Hoover, he engaged in sexually abusive conduct of Plaintiff, by and through his employment with Frisco ISD and Frisco PD, which caused Plaintiff to suffer a deprivation of her rights guaranteed by the Constitution, as set forth above, including the substantive due process component and equal protection rights applied by the Fourteenth Amendment.

74.     Despite ample notice in the form of multiple instances of open and obvious improper conduct between Defendant Hoover and Plaintiff, Defendants were consciously indifferent to the gross deprivation of Plaintiff's constitutional rights occurring under their noses. At the time of the events made the basis of this lawsuit, Defendants ostensibly had official policies in place regarding appropriate interactions between SROs and FISD students and policies regarding the reporting of inappropriate behavior by SROs with FISD students. Such policies were ignored by multiple FISD officials and SROs.

75.     At all relevant times, Defendants Frisco ISD and Frisco PD were aware of Plaintiff's rights under the Equal Protection as those rights were clearly established at the time of the Defendant's violations. Further, Defendants Frisco ISD and Frisco PD were policymaking bodies for the actions of school officials and SROs working within the school district. Defendant Hoover was a state actor acting under the color of state law. As such, Plaintiff alleges that Defendants, jointly and severally, deprived Plaintiff Jane Doe of her substantive due process rights in contravention of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 by failing to fashion property or execute faithfully adequate policies to recognize, investigate, record, prevent and report inappropriate behavior by SROs, and instead allowed the development and adherence to customs and/or practices that lead to the injuries suffered by Plaintiff, including but not limited to the following:

a.     Overlooking or discounting complaints and information indicating inappropriate "grooming" or sexual behavior from SROs or other staff towards students;

b.     Hiring, maintaining, and/or assigning SROs or other staff in disregard for information indicating prior inappropriate behaviors towards FISD students;

c.     Not documenting complaints of inappropriate conduct by SROs;

      d.     Not conducting sufficient investigations and following up on signs of inappropriate sexually based behavior between SROs or other staff and FISD students; and/or

      e.     Maintaining a tolerance for inappropriate behaviors between SROs or other staff and FISD students.

76.     Said officials, including FISD (acting through its school board as policymaker) failed to maintain enforcement of sufficient policies to govern the hiring, training, supervision and discipline of educators relative to protecting students from the risk of sexual abuse. Said officials, as policymakers, proximately caused Plaintiff's injuries and damages when they committed the particular acts and/or omissions.

      a.     Failing to train and supervise teachers, SROs, and other staff adequately concerning their interaction with FISD students and signs of sexually inappropriate and/or grooming behavior by SROs or other staff;

      b.     Failing to train school officials and SROs regarding the proper manner in which to investigate and report information concerning sexually inappropriate and/or grooming behavior by educators, SROs, and other staff;

      c.     Failing to adequately supervise Defendant Hoover;

      d.     Failing to adequately investigate Defendant Hoover for prior complaints of inappropriate behaviors with FISD female students;

      e.     Failing to adequately discipline Defendant Hoover for prior complaints of inappropriate behaviors with FISD female students;

      f.     Responding with deliberate conscious indifference to substantial, credible evidence of SRO misconduct;

      g.     Failing to establish adequate procedures for reviewing SROs, in general, and complaints involving allegations of inappropriate behaviors by SROs; and

      h.     Failing to not callously disregarding Plaintiff's constitutional rights.

77.     As a direct and proximate result of said acts and/or omissions, Plaintiff has suffered the following injuries and damages:

    a.    Violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from state-sponsored deprivation of liberty without due process of law, and enjoyment of equal protection under the law;

    b.    Violation of Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution to be free from state-sponsored deprivation of liberty without due process of law, and enjoyment of equal protection under the law; and

    c.    Plaintiff's pain and suffering and emotional trauma and suffering.

**COUNT THREE:  42 U.S.C. § 1983 – 4th Amendment Constitutional Violations**
(Against Defendant Hoover in his official capacity and against Defendant Frisco PD)

78.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein. All claims and matters are plead in the alternative so as to avoid waiver.

79.    "A voluntary encounter between an officer and a citizen may ripen into a seizure triggering the Fourth Amendment . . . 'only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of [the] citizen.'" *United States v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

80.    A Fourth Amendment violation can occur where 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Bostick*, 501 U.S. at 435–36).

81.    While no per se rules govern when an encounter with law enforcement constitutes a seizure, circumstances indicative of a seizure include: "the threatening presence of several officers"; "the display of a weapon by an officer"; "physical touching of the person of the citizen"; and "the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *See Florida v. Royer*, 460 U.S. 491, 506 (1983); *Mask*, 330 F.3d at 337 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

82.    Plaintiff suffered an unreasonable seizure in violation of the Fourth Amendment. The seizure was performed by Defendant Hoover who was an SRO acting under color of law. The seizure occurred because of Defendant Hoover's use of his position as an SRO to intimidate Plaintiff so that she would not feel comfortable rejecting his advances. Defendant Hoover would discuss his gun, his experience putting individuals in a "rape choke hold" and how he could run her license plates because he "knew people."

83.    Defendant Hoover's actions in violation of the Fourth Amendment were unreasonable under the circumstances.

84.    As a result of Defendant Hoover's actions, Plaintiff suffered an injury.

### COUNT FOUR:  42 U.S.C. § 1983 – 8th Amendment Constitutional Violations
(Against Defendant Hoover in his official capacity and Defendant Frisco PD)

85.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein. All claims and matters are plead in the alternative so as to avoid waiver.

86.    The Eighth Amendment protects detained individuals from cruel and unusual punishment. Rape and sexual abuse while detained have been found to be a cruel and unusual punishment. The sexual abuse of an SRO towards a student serves no legitimate role.

87.    Defendant Hoover used excessive and unnecessary force or threat of force to persuade Plaintiff to accept his sexual advances.

88.    Defendant Hoover acted maliciously and sadistically for the purpose of causing harm to Plaintiff.

89.    Defendant Hoover's actions caused harm to Plaintiff.

90.    We now hold that a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual

conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading. or demeaning the prisoner." *Bearchild v. Cobban*, Case No. 17-35616 (9th Cir. 2020).

### COUNT FIVE:  Monell Claim (inadequate hiring, training, and supervision)
(Against Defendant Frisco ISD and Defendant Frisco PD)

91.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.  All claims and matters are plead in the alternative so as to avoid waiver.

92.    Both Defendants Frisco ISD and Frisco PD had an unconstitutional policy of ignoring, minimizing, and/or failing to investigate inappropriate behavior by SROs towards students.

93.    This unconstitutional policy exists through an unofficial custom or practice exercised repeatedly.  Specifically, SROs and other employees of both Defendant Frisco ISD and Frisco PD witnessed multiple instances of inappropriate behavior between Plaintiff and Defendant Hoover and between Defendant Hoover and other students of Defendant Frisco ISD.  None of these individuals reported the behavior or did any sort of investigation.

94.    As a result of Defendant Frisco ISD and Defendant Frisco PD's failure to adequately hire, train, or supervise Defendant Hoover and others, Defendant Hoover violated Plaintiff's clearly established constitutional rights and Plaintiff suffered damages.

### COUNT SIX:  NEGLIGENCE/GROSS NEGLIGENCE AND/OR RECKLESSNESS
(Against Defendant Frisco ISD and Defendant Frisco PD)

95.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.

96.    Defendants Frisco ISD and Frisco PD owed a clear duty to Plaintiff and other students to protect their constitutional rights while on school property.

97.    Defendants Frisco ISD and Frisco PD acting through their acts and servants were negligent, careless, reckless, and grossly negligent in the following ways:

a)    In failing to properly train, supervise, and monitor their staff;

b)    In failing to provide a safe environment for children including Plaintiff;

c)    In hiring and retaining employees that were not fit to care for children including Plaintiff;

d)    In failing to take reasonable precautions and safety measures for its students;

e)    In failing to properly hire, train, and/or supervise its employees, including SROs;

f)    In failing to have adequate policies and procedures in place to protect minor female students, including Plaintiff;

g)    In failing to act as a reasonably prudent entity would under the same or similar circumstances;

h)    In failing to protect the Plaintiff;

i)    In failing to enforce their own internal rules, policies, procedures, and standards;

j)    In any other such manner that Plaintiffs may become aware of through discovery and/or trial.

98.    All of which were the direct and proximate cause of the damages suffered by the Plaintiff herein, said acts being in violation of the statutes and laws of the United States and the State of Texas.

99.    That as a direct proximate result of Defendants' negligence, gross negligence, carelessness, and/or recklessness, Plaintiff was harmed and sustained severe emotional distress, humiliation, mental anguish, indignity, loss of enjoyment of life which required and will in the future require psychological and psychiatric medical care and treatment.

100.    <u>Exemplary damages</u>.  Plaintiff's injury resulted from Defendant's actual fraud, gross negligence, or malice, which entitles Plaintiff to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).  Defendant knew or should have known the risks associated with his behavior and nonetheless engaged in the unconsented conduct.

### COUNT SEVEN:  OFFENSIVE PHHYSICAL CONTACT, ASSAULT AND SEXUAL ASSAULT
(against Defendant Hoover)

101.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.

102.    Defendant Hoover committed an assault on Plaintiff by offensive physical conduct with a student while he was an SRO for Defendant Frisco ISD for which he is directly liable. Specifically, as set forth herein, Defendant Hoover acted intentionally or knowingly, Defendant Hoover made contact with Plaintiff's person.  Defendant Hoover knew or reasonably should have known that Plaintiff would regard the contact as offensive or provocative, and Defendant Hoover caused injury to Plaintiff.

103.    Defendant Hoover committed an assault on Plaintiff by choking her without her explicit and/or effective consent.  Plaintiff did not consent to the choking and she did not like it. Defendant Hoover choked Plaintiff intentionally or knowingly and caused injury to Plaintiff.

104.    Defendant Hoover committed sexual assault on Plaintiff by engaging in digital penetration, oral, vaginal, and anal sex without Plaintiff's explicit and/or effective consent. Defendant Hoover's actions were done intentionally or knowingly and caused injury to Plaintiff.

105.    <u>Exemplary damages</u>.  Plaintiff's injury resulted from Defendant's actual fraud, gross negligence, or malice, which entitles Plaintiff to exemplary damages under Tex. Civ. Prac.

& Rem. Code § 41.003(a).  Defendant knew or should have known the risks associated with his behavior and nonetheless engaged in the unconsented conduct.

### COUNT EIGHT:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

106.    Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.

107.    In the sexual abuse of Plaintiff Jane Doe, Defendant Hoover acted intentionally and/or recklessly, and his conduct was so outrageous in character and extreme in degree that it went beyond all possible bounds of decency.  Defendant Hoover's actions constituted outrageous conduct because he knowingly abused his position of authority as an SRO within Defendant Frisco ISD and knew that Plaintiff was particularly susceptible to emotional distress given her personal and family history.  Defendants Frisco ISD and Frisco PD acted intentionally and/or recklessly through their callous disregard of Plaintiff's rights.  These actions constituted outrageous conduct

108.    Such conduct by Defendants proximately caused Plaintiff's emotional distress, which was severe, as the acts caused her embarrassment, fright, horror, grief, shame, humiliation, and worry.

109.    In the alternative to all other counts, Defendants caused Plaintiff emotional distress. Specifically, by intentionally, knowingly, and recklessly inflicting sexual and/or bodily injury upon Plaintiff by intentionally, knowingly, and recklessly by engaging in unconsented sexual conduct with Plaintiff and publicly disclosing her name as his victim.

110.    Defendants' conduct, as outlined herein, was intentional and/or reckless, extreme and outrageous.

111.    Defendants' wrongful conduct proximately caused severe emotional distress to Plaintiff, causing the damages outlined below.

## COUNT NINE: BREACH OF FIDUCIARY DUTY
(Against Defendant Hoover and Defendant Frisco ISD)

112.   Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.  All claims and matters are plead in the alternative so as to avoid waiver.

113.   Plaintiff had a fiduciary relationship with Defendants Hoover and Frisco ISD. Defendants Hoover and Frisco ISD breached their fiduciary duties to Plaintiff, and the breaches proximately caused injuries to Plaintiff and resulted in benefit to Defendants Hoover and Frisco ISD.

## COUNT TEN:  GROSS NEGLIGENCE
(Against All Defendants)

114.   Plaintiff incorporates by reference all foregoing paragraphs as if fully set forth herein.  All claims and matters are plead in the alternative so as to avoid waiver.

115.   Defendant's acts and/or omissions as set forth above, when viewed objectively at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. These were gross and reckless actions that disregarded the safety and well-being of Plaintiff. Further, Defendant had actual, subjective awareness of the risks involved, yet they nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

116.   Defendant's actions are the proximate cause of Plaintiff's injuries.

117.   Exemplary damages.  Plaintiff's injury resulted from Defendants' actual fraud, gross negligence, or malice, which entitles Plaintiff to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).  Defendants knew or should have known the risks associated with his behavior and nonetheless engaged in the unconsented conduct.

## VI.    PLAINTIFF'S DAMAGES

118.    Based on the reasons stated in this Petition, Plaintiff asks this Court to grant her the following relief:

a.    Injunctive relief in the form of a mandatory injunction requiring Frisco ISD and Frisco PD to properly train, instruct, and supervise its personnel regarding the warning signs of sexual grooming and improper sexual relationships between students and SROs;

b.    Past and future compensatory damages in an amount to be proved at trial, including but not limited to, compensation for past and future physical harm, emotional distress, pain and suffering;

c.    Attorneys' fees under any law that provides for the recovery of attorneys' fees, including 42 U.S.C. § 1988;

d.    Prejudgment interest, post-judgment interest, and costs of court as allowed by law; and

e.    Any further relief to which she may be justly entitled.

### VII.    ATTORNEYS' FEES

119.    Defendants' conduct, as described in this Petition, and the resulting damage to Plaintiff necessitated Plaintiff retaining the undersigned counsel to represent her in investigating and prosecuting her claims.  Plaintiff is, therefore, entitles to recover an additional sum from Defendants to compensate her for a reasonable fee for such attorneys' services in the investigation, preparation, and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

120.    In this regard, Plaintiff claims entitlement to attorneys' fees and costs under the fee-shifting provisions of 42 U.S.C. § 1988.

### VIII.    JURY DEMAND

121.    Plaintiff hereby demands a trial by jury and furnishes the requisite fee.

### IX.    PRAYER

Plaintiff's Original Petition                                                    Page 29 of 30

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Jane Doe prays for judgment against Defendants for the injuries and damages that Plaintiff incurred as a result of Defendants' wrongful conduct, as outlined above; pre-judgment and post-judgment interest as allowed by law; costs of court; attorney's fees; and all other and further relief, both at law and in equity, to which Plaintiff is entitled.

Respectfully Submitted,

FORTENBERRY FIRM, PLLC

By: _____

**Zeke Fortenberry**
State Bar No. 24061361
18333 Preston Rd. Suite 375
Dallas, TX 75252
Telephone: 469-626-7373
Facsimile: 469-716-4190
E-Mail: zeke@fortenberryfirm.com